A07A1975. STANLEY v. THE STATE.
(657 SE2d 305)

BERNES, Judge.

Following a jury trial, Terry Marcus Stanley was convicted of child molestation. On appeal, Stanley contends that the trial court's

charge to the jury on DNA evidence was incomplete and prejudicial as a matter of law. We disagree and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence adduced at trial showed that the five-year-old victim, Stanley's niece, stayed with him from December 25, 1996 through January 1, 1997. On the evening that she returned home, the victim screamed in pain when her mother asked her to sit in the water during her bath. The victim then told her mother that Stanley "had been touching her and doing things to her" during her visit with him.

The victim's mother immediately took her to the hospital, where a rape kit was performed and the victim's underpants were collected for forensic testing. The victim disclosed in interviews with law enforcement that she had been sexually molested by Stanley. The subsequent serology test revealed that the victim's underpants tested positive for spermatozoa.

At trial, the state's forensic expert testified that he had conducted DNA testing on the semen sample taken from the victim's underpants and compared it to a blood sample that had been taken from Stanley. He concluded that the probability that the semen found in the victim's underpants came from someone other than Stanley was one in "greater than 6.2 billion, greater than the world population."

Stanley's sole contention on appeal is that the trial court's charge on DNA evidence was incomplete. After instructing the jury that "[t]he weight which is given to the testimony of an expert witness is a question of fact . . . to be determined by you, the jury," the trial court gave the following charge:

> [E]vidence relating to DNA comparison has been admitted for your consideration. Identification by DNA comparison is considered opinion evidence and is governed by the law concerning opinion testimony as has been given to you.
>
> As opinion testimony, evidence relating to DNA comparison is dependent upon many factors. Among the factors are the believability and the accuracy of the witnesses who were involved with the process of obtaining, identifying, preserving, recording, and maintaining the physical evidence, and upon the accuracy and validity of testing procedures themselves that were used to form such opinions. All of these

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

issues are matters for you to determine, consider and determine. [sic]

It is for you to determine what weight, if any, you will give to evidence relating to DNA comparison in your decision on this case.

Stanley concedes that the charge as given tracked the language set forth in the pattern charge and is otherwise a correct statement of law with respect to the collection and testing of DNA. See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Criminal Cases, Vol. II (3d ed. 2003), § 1.35.30, p. 30; *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990). He nonetheless argues that the charge failed to explain to the jury the statistical significance of the DNA comparison, and contends that the jurors should have further been instructed that:

(1) A given DNA profile may be shared by two or more people;

(2) The random match probability statistic is not the equivalent of a statistic that tells the jury the likelihood of whether the defendant committed the crime;

(3) The random match probability statistic is the likelihood that a random person in the population would match the characteristics that were found in the crime scene evidence and also in defendant's DNA;

(4) Where the known DNA sample from the defendant matches the unknown sample obtained from the crime scene, it does not necessarily mean the defendant is the source of the sample found at the crime scene; and

(5) That jurors alone have the final responsibility to decide the weight to be given to DNA random match probability statistics.

Stanley's proposed jury charge is argumentative and composed primarily of evidentiary matters that were not proper for jury instruction. See, e.g., *Gonzalez v. State*, 277 Ga. App. 362, 370-371 (10) (626 SE2d 569) (2006) (affirming trial court's refusal to instruct the jury that "the random match probability statistic is not the equivalent of a statistic that tells the jury the likelihood of whether the defendant committed the crime" because the charge was argumentative) (punctuation omitted). See also *Johnson v. State*, 235 Ga. 486,

490 (1) (220 SE2d 448) (1975) ("It is not error to refuse to charge where the request is argumentative, summing up facts favorable to the defendant's theory of innocence.") (citation omitted). It is the responsibility of the parties, not the court, to ensure that the jury is given the factual evidence necessary to evaluate the weight to be given to the expert's statistical testimony.[2]

Moreover, Stanley did not request the additional charge that he now asserts was erroneously omitted. Thus, we will reverse only if the asserted omission was "clearly harmful and erroneous as a matter of law in that the charge as given fail[ed] to provide the jury with the proper guidelines for determining guilt or innocence." (Citation and punctuation omitted.) *Phillips v. State*, 269 Ga. App. 619, 629 (7) (604 SE2d 520) (2004). The trial court instructed the jury that the expert's DNA comparison results constituted opinion testimony that could be completely disregarded if the jury deemed it appropriate to do so. The trial court also thoroughly instructed the jury on the principles of law regarding evidence, both direct and circumstantial, and informed the jury that a conviction based upon circumstantial evidence "must exclude every other reasonable theory of guilt other than the guilt of the accused." Finally, the trial court properly instructed the jury that it alone had the power to determine witness credibility and assess whether a witness's testimony had been impeached during its consideration of the case. The trial court's instructions to the jury as given appropriately covered the applicable principles of law and provided the jury with proper guidelines to aid in its consideration of the DNA evidence and its determination of Stanley's guilt. See *Walker v. State*, 279 Ga. App. 749, 752 (3) (b) (632 SE2d 482) (2006); *Gonzalez*, 277 Ga. App. at 370-371 (10); *Morita v. State*, 270 Ga. App. 372, 375 (3) (606 SE2d 595) (2004). Cf. *Shaw v. State*, 179 Ga. App. 807, 809 (2) (348 SE2d 132) (1986); *Graham v. State*, 168 Ga. App. 23 (308 SE2d 413) (1983) (physical precedent only). Accordingly, the trial court did not err in failing to give Stanley's unrequested jury charge.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 29, 2008.

*Murphy C. Miller, Jimmonique R. S. Rodgers*, for appellant.

---

[2] In this regard, it is relevant to note that the DNA expert explained the nature and meaning of the statistical evidence as follows:

In general, we know from databases, because we've genetically typed hundreds and hundreds of people, their DNA profiles are in our computer and for each of these types we have a known frequency. From the known frequencies we interpret the probability of someone else matching that, so in terms of statistical analysis, we are using probability or chance measurements to give weight to the evidence.

N. *Stanley Gunter, District Attorney, Charles W. Smegal, Assistant District Attorney*, for appellee.