**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 25, 2018**

# In the Court of Appeals of Georgia

A17A1681. IN THE INTEREST OF T. W., a child.

REESE, JUDGE.

Following a bench trial, the juvenile court found T. W. delinquent for committing the offenses of possession of a pistol by a person under the age of 18 and participation in criminal street gang activity. In his sole enumeration of error on appeal, T. W. challenges the sufficiency of the evidence for the offense of participation in criminal street gang activity.[1] For reasons that follow, infra, we reverse the adjudication of delinquency to the extent it was based upon a finding that T. W. had participated in criminal street gang activity.

---

[1] T. W. does not challenge the juvenile court's adjudication of delinquency to the extent the adjudication was based on his admission to the charge of illegally possessing a firearm.

"In reviewing an adjudication of delinquency, this Court construes the evidence and all reasonable inferences therefrom in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged." *In the Interest of W. B.*, 342 Ga. App. 277 (801 SE2d 595) (2017) (citation and punctuation omitted). In so doing, we do not weigh the evidence or determine witness credibility. See id.

So viewed, the evidence shows that, in January 2017, corrections officer Kevin O'Steen was supervising a prison work detail that was approached by a group of young people. O'Steen told them to leave, and the group walked over to an abandoned house across the street. After watching one of the group break a window at the house, O'Steen called police. When police arrived on the scene, the group dispersed.

Police Sergeant Matthew Wilson approached T. W., who had started walking away from the house with his cousin, Charshaun Simmons. According to Wilson, T. W. appeared to be of school age, so he stopped him to ask him why he was not in school. While speaking with T. W., Wilson observed that T. W. was palpably nervous and kept his hand in his pocket, and the officer asked T. W. to take his hand out of the pocket. The officer searched T. W. and found a .22 caliber handgun in his pocket.

T. W. was taken to the police station, where he gave a recorded statement. T. W. told an investigator that Lawrence Bell, one of the other young people who had been at the house, originally had the gun. When police officers approached them, Bell slid the gun toward T. W. and told him to take it because, as a juvenile, T. W. would get a lighter sentence if he was caught. Although T. W. claims he initially refused to pick up the gun, he ultimately picked up the gun and put it in his pocket before walking away from the house.

The State filed a delinquency petition against T. W. based upon the offenses of possession of a pistol by a minor and participation in criminal street gang activity as a member of the "Folk Nation" gang. At the delinquency hearing, the State tendered certified copies of criminal convictions for Simmons and Bell showing that the two were affiliated with gangs. In 2014, Bell – then a juvenile – admitted to participating in street gang activity as a member of the Folk Nation gang. Simmons was adjudicated delinquent for participating in street gang activity as a member of the "Bloods" street gang.

The State tendered Detective Garrett Wright as an expert witness on gang identity, membership, affiliation, and investigation. Wright testified that Folk Nation is an umbrella street gang organization and that gangs under its control often had a

3

"para-military style ranking structure" with subordinate gang members under ranking officers. According to Wright, it is not uncommon for ranking gang members "to pass guns to juveniles" who face reduced scrutiny and lesser sentences. Wright testified it was his expert opinion that T. W. "is an associate of Lawrence Bell's and the Folk Nation" gang.

Based upon the evidence, the juvenile court adjudicated T. W. delinquent for both possessing a gun and participating in street gang activity as an affiliate of the Folk Nation gang. T. W. appeals this ruling, arguing that the State presented insufficient evidence that he was associated with the Folk Nation criminal street gang or that he knowingly and intentionally participated in street gang activity.

Georgia's Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq., makes it "unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of" certain enumerated criminal offenses, including possession of a firearm. OCGA § 16-15-4 (a). See OCGA § 16-15-3 (1) (J). In order to prove a violation of this Act, the State must show: (1) that T. W. was associated with a criminal gang; (2) that he committed the act of possessing a firearm; and (3) that the firearm possession was

intended to further the interests of the criminal gang activity. See *Zamudio v. State*, 332 Ga. App. 37, 39-40 (2) (771 SE2d 733) (2015).

In the case at bar, there was insufficient evidence to demonstrate gang affiliation. Pursuant to OCGA § 16-15-3 (2), "[c]riminal street gang" is defined as:

> any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity[.] The existence of such organization, association, or group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics, including, but not limited to, common activities, customs, or behaviors. Such term shall not include three or more persons, associated in fact, whether formal or informal, who are not engaged in criminal gang activity.

The only evidence that T. W. was involved with a criminal street gang is that he was in the presence of two people who had previously been adjudicated as gang members and that he performed an act which might be expected of a junior gang member. But the Supreme Court of Georgia has made clear that "the commission of an enumerated offense by the defendant is not itself sufficient to prove the existence

5

of a criminal street gang."[2] *Rodriguez v. State*, 284 Ga. 803, 808 (2) (671 SE2d 497) (2009) (punctuation omitted). Thus, the State must present more evidence than the fact that T. W. was in the mere presence of gang members and in possession of a gun belonging to a gang member (Bell).

In previous cases before this Court, the State proved that a juvenile was a gang member or otherwise connected to a gang by showing that he was wearing clothing or symbols associated with the gang or through the juvenile's admission that he was a gang member. See *In the Interest of D. M.*, 307 Ga. App. 751, 752 (1) (706 SE2d 683) (2011) (evidence was sufficient where the juvenile admitted to gang membership, the juvenile wore a black bandana that was associated with the gang, and the State tendered expert testimony that wearing a black bandana was a proclamation that the shooting at issue was a gang-related act); *In the Interest of C. P.*, 296 Ga. App. 572, 575 (675 SE2d 287) (2009) (evidence was sufficient where the juvenile wore colors associated with the gang, carried paper depicting gang symbols and codes, and admitted to gang membership); see also *Morris v. State*, 340

---

[2] The Supreme Court noted that, if such evidence, standing alone, was sufficient, "the nonsensical result would be that a member of any legitimate group could violate the Act merely by committing an enumerated offense." *Rodriguez*, 284 Ga. at 808 (2).

Ga. App. 295, 299-300 (1) (797 SE2d 207) (2017) (evidence was sufficient to show that the defendant was associated with a criminal street gang when the State presented Facebook posts by the defendant in which he "displayed various distinguishing characteristics . . . (e.g., hand signs/symbols, language, tattoos)" associated with a specific criminal street gang); *Taylor v. State*, 331 Ga. App. 577, 578, 581-583 (2) (771 SE2d 224) (2015) (evidence was sufficient where the State showed that the defendant had "hung" out with gang members previously and that he armed himself with a handgun before going with those gang members to an area occupied by a rival gang in order to "invade" the rival gang's territory). Here, the State presented no evidence that T. W. was wearing any colors or attire that were uniquely associated with the Folk Nation gang, that he had ever displayed signs or symbols affiliated with Folk Nation gang membership, or that he had previously spent time with members of Folk Nation.

The fact that Simmons and Bell (two of the individuals who were present just before T. W. was taken into custody) were members of criminal street gangs – albeit different gangs – may provide circumstantial evidence of T. W.'s gang membership. However, to warrant an adjudication of delinquency based solely upon circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt,

7

but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. See *In re E. A. D.,* 271 Ga. App. 531, 532 (610 SE2d 153) (2005). As we have held,

> [i]n a case entirely dependent on circumstantial evidence, . . . the State's evidence must both be consistent with the hypothesis of guilt and must exclude every other reasonable hypothesis. Even when the circumstantial evidence creates a strong suspicion of guilt, mere suspicion is insufficient to support a conviction.

*In re E. A. D.,* 271 Ga. App. at 532 (citation and punctuation omitted).

Here, while T. W.'s conduct in socializing with gang members and accepting a gun from a Folk Nation gang member might create a mere suspicion that he was affiliated with the Folk Nation gang, such circumstantial evidence is legally insufficient to meet the State's burden of establishing that T. W. was a member of or associated with the Folk Nation gang beyond a reasonable doubt. See *Jones v. State*, 292 Ga. 656, 659-660 (1) (b) (740 SE2d 590) (2013) (conviction was reversed where the State failed to prove that the defendant was a member of or associated in any way with a criminal street gang); *In the Interest of A. G.,* 317 Ga. App. 165, 166-167 (730 SE2d 187) (2012) (convictions were reversed because the evidence was insufficient to establish that the juvenile defendants were members of a criminal street gang;

8

while the evidence showed that the juveniles possessed purple bandanas and a notebook that appeared to refer to a gang, there was no evidence that any local gangs used purple bandanas or used the name written in the notebook). Thus, we must reverse the juvenile court's adjudication of T. W. as delinquent to the extent such adjudication was based upon a finding that T. W. participated in criminal street gang activity.

*Judgment reversed. Miller, P. J., and Doyle, P. J., concur.*